# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| **WILLIAM STEVEN GILLIAM**, individually and on behalf of all others similarly situated, | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) ) |
| **PRINCE HEALTH GROUP LLC,** | ) ) |
| **Defendant.** | ) ) |

NO. 1:24-cv-00033

JUDGE CAMPBELL
MAGISTRATE JUDGE HOLMES

## MEMORANDUM

This case is before the Court pursuant to a Complaint filed by Plaintiff William Steven Gilliam on behalf of himself and a putative class asserting claims for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Defendant Prince Health Group LLC ("Prince Health"). (Doc. No. 1). Before the Court is Prince Health's motion to compel arbitration. (Doc. No. 11). For the reasons stated herein, the motion will be **DENIED**.

### I. BACKGROUND

Prince Health is an insurance brokerage firm. (*See* Declaration of Christopher McGill, Doc. No. 11-1). It purchases information of potential customers ("leads") from third parties. (*Id*.). As relevant here, Prince Health purchased Plaintiff's personal information, including his name and phone number from JLN CORP d/b/a P1 Solutions ("P1 Solutions") indirectly from and sourced by Techforcemedia LLC d/b/a Top American Insurance ("Top American"). (*Id*. at ¶¶ 5-7; Doc. No. 12-2 at ¶¶ 11-12).Top American sold Plaintiff's personal information, including his name and phone number to P1 Solutions which then sold the information to Prince Health. (*Id*. at ¶¶ 11-12).).

Plaintiff also submitted the declaration of Hammad Malik, sole member of Top American. (Doc. No. 11-2). Top American operates the website topamericaninsurance.com (the "Website"),

which is "a portal to facilitate insurance agents, insurance companies, lead aggregators and other similar parties (each a "Provider") to offer for sale and to sell, insurance and other products to potential consumers who have applied through the Site to receive insurance and other authorized quotations from a Provider[.]" (*Id.* at ¶ 3). Malik stated that Gilliam entered his personal information on the Website on December 4, 2023, and clicked boxes accepting the TCPA waiver, "Terms and Conditions," and "Privacy Policy" and then clicked "Submit" to submit his information. (*Id.* at ¶¶ 5-7). Immediately below the "Submit" button was the following affirmation: "By clicking the 'Submit' button, I provide my electronic signature and represent that I am at least 18 and agree to this website's **Privacy Policy** and **Terms and Conditions**…" (*See* Doc. No. 11-2 ¶ 7). The submission page includes a link to the Terms and Conditions, section 2 of which contains an Arbitration Agreement.

Top American's record-keeping process uses software that screen records the site user, including tracking user information, clicks, and consents. (*Id.* at ¶ 4). Prince Health filed the screen recorded video displaying the clicks and submissions associated with the entry of Plaintiff's personal information. (*See* Doc. No. 11-2, Exhibit 2-2; Doc. No. 14, Notice of Manual Filing). The screen recording shows a user entering Gilliam's name, phone number, and other information on the Website, clicking boxes accepting the TCPA waiver, "Terms and Conditions," and "Privacy Policy," and then clicking "Submit" to submit his information. (*Id.* at ¶¶ 5-7).

In response to the motion to compel arbitration, Plaintiff filed a declaration stating that he "never provided [his] consent" to receive telephone solicitations to Prince Health or Top American. (Gilliam Decl., Doc. No. 15-1 ¶ 8). Plaintiff stated that he viewed the website in response to the instant motion and that he has no recollection of having visited it and that a review of his internet history shows he was not online on the date Defendant contends he submitted personal information to the Website (*Id.* ¶ 10). He added he had no reason to seek health insurance

online because he has health insurance through his employer, and that some of the personal information – the email address and date of birth – is not accurate. (*Id*. ¶¶ 12-14).

Based on this initial briefing, the Court ordered the parties to engage in limited discovery on the issues raised in the initial briefing and declarations. (*See* Order, Doc. No. 21). Each of the parties filed a supplemental brief (Doc. Nos. 31, 35), and Prince Health filed the transcript of Plaintiff's deposition, interrogatory responses, and response to requests for production. (Doc. No. 33). During his deposition when asked about his internet search history, Plaintiff explained that he had no independent recollection of his internet search history on December 4, 2023, and relied on the internet history he obtained from *myactivity.google.com* as the basis for his statement that he did not use the internet on that date. (Pl. Dep. at 12-14, 38-39). Although Plaintiff stated that he used the Safari web browser, he did not search for internet history anywhere other than *myactivity.google.com* and was not sure that it gives a complete picture of his internet history. (Pl. Dep. at 18-20). Plaintiff disclaimed an understanding of most aspects of his phone. In response to questions about what internet browser he used, whether the internet history shows search history for browsers other than Google, whether he tried to retrieve browser history from Safari, whether he was currently using Safari as an internet browser, whether data from his old iPhone was backed up, whether any data could be found on iCloud, and whether his phone was set to automatically delete search history, he repeatedly stated that he did not know how things worked and that he is "not an electronic person," (*Id*. at 10, 18, 21, 25, 29, 33). Nevertheless, Plaintiff maintained that he did not visit the Website, clearly stating, "it was not me that clicked that box, because it's not me on that website." (*See* Pl. Dep. at 39).

## II. LEGAL STANDARD

The question of whether Plaintiff's claim must be arbitrated is governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq*. The FAA "expresses a strong public policy favoring

3

arbitration of a wide class of disputes" and provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005) (quoting *Cooper v. MRM Invest. Co.*, 367 F.3d 493, 498 (6th Cir. 2004) and 9 U.S.C. § 2). "Arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 777 (6th Cir. 2005) (quoting *United Steelworkers, Loc. No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)).

A motion to compel arbitration is treated like a motion for summary judgment under Federal Rule of Civil Procedure 56. *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (6th Cir. 2021). The party seeking to compel arbitration bears the initial duty to present evidence that would allow a trier of fact to find all required elements of a contract, including Plaintiff's acceptance. *Id*. at 839. If the Plaintiff presents evidence putting the making of the arbitration contract "in issue," the court must proceed to trial to resolve the question. *Id*. at 837 (citing 9 U.S.C. § 4). If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration. *Id*. "The question whether the party opposing arbitration has put the making of the arbitration contract 'in issue' looks a lot like the question whether a party has raised a 'genuine issue as to any material fact.'" *Id*. at 838. To establish a genuine dispute over whether he accepted the contract, Plaintiff must present "'specific facts, as opposed to general allegations,' that would allow a rational trier of fact to find" that the required elements of a contract are lacking. *Id*. at 839. "An 'unequivocal denial' [of accepting an arbitration agreement] that takes the form of admissible 'evidence' can create a genuine dispute of fact." *Id.* at 840; *see also Mazera v. Varsity Ford Management Services, LLC*, 565 F.3d 997, 1001 (6th Cir. 2009) ("[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits ... should be sufficient

4

to require a jury determination on whether there had in fact been a meeting of the minds"). However, standing alone, a claim by Plaintiff that he does not recall agreeing to arbitration falls short. *Boykin*, 3 F.4th at 840.

### III. ANALYSIS

Because the agreement to arbitrate is a matter of contract, whether a valid agreement to arbitrate exists is determined by state law. 9 U.S.C. § 2; *Cooper*, 367 F.3d at 498; *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 477 (6th Cir. 2005). Federal courts sitting in diversity apply the choice of law rules of the forum state, which in this case is Tennessee. *Glenway Indus., Inc. v. Wheelabrator-Frye, Inc.*, 686 F.2d 415, 417 (6th Cir. 1982). Tennessee follows the rule of *lex loci contractus*, which provides that a contract is governed by the law of the jurisdiction in which it was executed absent a contrary intent. *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014). Here, if Plaintiff entered into an agreement to arbitrate, he did so in Tennessee, so Tennessee law governs. *See Anderson v. Amazon.com, Inc.*, 478 F. Supp.3d 683, 693 (M.D. Tenn. 2020) (finding Tennessee law applies to a contract when a party enters into a contract by "clicking" online to accept the agreement while present in Tennessee).

In Tennessee, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Doe v. HCA Health Servs. Of Tenn, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (internal citation and quotation omitted). Under the Uniform Electronic Transactions Act ("UETA"), Tenn. Code Ann. § 47-10-101, *et seq.*, an electronic signature satisfies any legal requirement for a signature. (*See* Tenn. Code Ann. § 47-10-102(8) ("'Electronic signature' means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.")). Because it requires a consumer to click a website image to "accept and submit," the

5

terms and conditions are considered a "clickwrap" agreement. *See Anderson*, 490 F. Supp. 3d at 1274 ("[A] clickwrap agreement is an agreement as to which a website user must manifest assent to the terms of the agreement by clicking on an icon.") (collecting authority); "[R]egardless of the label, these agreements are [ ] routinely upheld" and found to be enforceable. *Id.; see also*, *Scott v. RVshare LLC*, No. 3:21-cv-00401, 2022 WL 866259, at *3 (M.D. Tenn. Mar. 22, 2022).

Prince Health contends Plaintiff agreed to arbitrate the dispute in this case when he submitted his personal information on the Website and clicked boxes indicating agreement to "TCPA," the "Privacy Policy," and "Terms and Conditions." Prince Health submitted a screen recording showing the user's screen activity of filling out the form, clicking the consents, and clicking the "Submit" button (*see* Doc. No. 14), but does not provide any metadata or other information to show that the user who completed the form and associated consents was, in fact, Plaintiff. Nevertheless, based on the electronic signature professing to be that of Plaintiff, the Court finds Prince Health has met its burden to establish that Plaintiff accepted the terms and conditions, including the arbitration agreement.

The Court next considers whether Plaintiff has provided evidence placing the formation of a contract to arbitrate "in issue." Plaintiff denies having visited the Website or submitting his information. He says he "do[es] not recognize the website as one [he has] ever visited," never provided consent to Prince Health or Top American to make calls to his telephone number, and "[n]ever knowingly signed an arbitration agreement which allegedly covered any claims [he] may have under the TCPA." (Pl. Decl., Doc. No. 15-1 ¶¶ 8-10, 15). When deposed, Plaintiff stated, "it was not me that clicked that box, because it's not me on that website." (*See* Pl. Dep. at 39).

Prince Health argues that because Plaintiff does not unequivocally state that he did not submit information on the Website and his lack of recollection is based on an incomplete internet history, he has not put the agreement to arbitration "in issue" and the Court must compel

6

arbitration. Prince Health argues that Plaintiff does not outright deny having submitted his information, only that his internet search history does not show that he visited the Website, and he has no recollection of using it. Moreover, Plaintiff's review of his internet history was plainly inadequate to support his assertion that he did not use the internet all on December 4, 2023.[1]

Under some circumstances, Plaintiff's evidence would not be sufficient to place the agreement to arbitrate "in issue." As noted by Defendant, Plaintiff's denial, as stated in the declaration, is not unequivocal and his purported search of internet raises more questions than answers. Instead, Plaintiff relies on circumstantial evidence – he does not recall the website, he would not have been searching for insurance, some of the personal information is incorrect, etc. During his deposition, however, Plaintiff clearly stated, "it was not me that clicked that box, because it's not me on that website." (*See* Pl. Dep. at 39). This evidence is contrasted with Prince Health's evidence that an online user submitted Plaintiff's name and phone number on the Website and clicked associated consents. Unlike other cases where electronic signature and online consent has been found to be effective, here, other than the fact that Plaintiff's name and phone number were used, Prince Health offers no evidence that Plaintiff was the person who entered the information.

Viewing all facts and inferences in favor of Plaintiff, a reasonable finder of fact could conclude that someone other than Plaintiff entered Plaintiff's name and phone number on the Website. If that is the case, Plaintiff plainly did not agree to arbitrate. Therefore, the validity of the

---

[1] During his deposition, he testified that he did not know whether the internet search history he relied upon, which was from *myactivity.google.com*, showed his entire search and internet history for the time period in question, and he did not attempt to search his internet history on other browsers despite agreeing that he used the browser that "looks like a compass," *i.e.*, Safari. (*See* Pl. Dep. at 10-11, 20-22). Plaintiff also testified during his deposition that the activity log from *myactivity.google.com* showed that he visited YouTube. (Pl. Dep. at 17). His unqualified declaration that he "did not use the internet" on December 4, 2023, is, at best, misleading. Given Plaintiff's lack of facility with "electronics" (*see* Pl. Dep. at 10, 18, 21, 33), the Court will assume that any misrepresentation was inadvertent.

7

Arbitration Agreement is "in issue" and Prince Health's motion to dismiss and compel arbitration must be denied. *See Great Earth Companies*, 288 F.3d at 889 (citing 9 U.S.C. § 4).

## IV. CONCLUSION

For these reasons, the Motion to Compel Arbitration (Doc. No. 21) will be **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE